**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
KELLY L. V.                   :    Civ. No. 3:21CV00577(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION       :    April 1, 2022
                              :
------------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Kelly L. V. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand for further administrative proceedings. [Doc. #15]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #20].

For the reasons set forth below, plaintiff's Motion to Reverse or Remand an Administrative Agency Decision **[Doc. #15]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #20]** is **GRANTED.**

I.   **PROCEDURAL HISTORY**[1]

Plaintiff filed an application for DIB on July 17, 2018, alleging disability beginning June 16, 2015. See Certified Transcript of the Administrative Record, Doc. #13, compiled on August 5, 2021, (hereinafter "Tr.") at 118-19. Plaintiff's application was denied initially on December 19, 2018,[2] see Tr. 118, and upon reconsideration on March 12, 2019. See Tr. 134.

On March 5, 2020, plaintiff, represented by Attorney Russell Zimberlin, appeared and testified at a hearing before Administrative Law Judge ("ALJ") John Aletta. See generally Tr. 55-101. Vocational Expert ("VE") Josiah Pearson appeared and testified by telephone at the hearing. See Tr. 55-57, 81-95. On March 18, 2020, the ALJ issued an unfavorable decision. See Tr. 11-27. On February 24, 2021, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 18, 2020, decision the final decision of the Commissioner. See Tr. 1-6. This case is now ripe for review under 42 U.S.C. §405(g).

---

[1] In compliance with the Standing Scheduling Order, plaintiff filed a Statement of Material Facts, titled "Plaintiff's Statement of Facts," Doc. #16, to which defendant filed a "Response to Plaintiff's Statement of Facts." Doc. #20-2.

[2] The ALJ's decision reflects an initial application denial date of December 20, 2018. See Tr. 11. However, the record reflects an initial application denial date of December 19, 2018. See Tr. 118. This discrepancy does not affect the Court's analysis.

## II.  <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination involves two levels of inquiry. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999) (citations omitted). Substantial evidence is evidence that "'a reasonable mind might accept as adequate to support a conclusion[;]'" it is "'more than a mere scintilla.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of New York v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)). The reviewing court's "responsibility is always to ensure that a claim has been fairly evaluated[.]" <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly." <u>Poole v. Saul</u>, 462 F. Supp. 3d 137, 146 (D. Conn. 2020).

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity" by the ALJ to enable a reviewing court "to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or reject" the testimony of any witness, but "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Leslie H. L. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00150(SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir.

4

2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507
(2d Cir. 2009)).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual meeting
certain requirements who is under a disability is entitled to
disability insurance benefits. <u>See</u> 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider
a claimant disabled under the Act and therefore entitled to
benefits, plaintiff must demonstrate that she is unable to work
after a date specified "by reason of any medically determinable
physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a
continuous period of not less than 12 months[.]" 42 U.S.C.
§423(d)(1)(A). Such impairment or impairments must be "of such
severity that [s]he is not only unable to do [her] previous work
but cannot, considering [her] age, education, and work
experience, engage in any other kind of substantial gainful work
which exists in the national economy[.]" 42 U.S.C.
§423(d)(2)(A); <u>see also</u> 20 C.F.R. §404.1520(c) (requiring that
an "impairment or combination of impairments ... significantly
limit[] ... physical or mental ability to do basic work
activities[]" to be considered "severe").

There is a familiar five-step analysis used to determine
whether a person is disabled. <u>See</u> 20 C.F.R. §404.1520(a)(4). In

the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If
> [s]he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits [her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider [her]
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, [s]he has the residual functional
> capacity to perform [her] past work. Finally, if the
> claimant is unable to perform [her] past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

> Through the fourth step, the claimant carries the
> burdens of production and persuasion, but if the
> analysis proceeds to the fifth step, there is a limited
> shift in the burden of proof and the Commissioner is
> obligated to demonstrate that jobs exist in the national
> or local economies that the claimant can perform given
> [her] residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum. Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is "the most" a person is still capable of doing despite limitations resulting from her or his physical and mental impairments. 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and quotation marks omitted).

IV. **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability within the meaning of the Social Security Act from June 16, 2015, through" March 18, 2020.[3] Tr. 12.

_____

[3] A claimant seeking DIB for a period of disability must, in addition to presenting evidence of her disability, also satisfy the "insured status" requirements of the Act. 42 U.S.C. §423(c). To be entitled to benefits, plaintiff must demonstrate that she

At step one, the ALJ found that the plaintiff "has not engaged in substantial gainful activity since June 16, 2015, the alleged onset date[.]" Tr. 13. At step two, the ALJ found that plaintiff suffered from the severe impairments of "status-post lumbar fusion surgery; post-laminectomy syndrome; trochanteric bursitis of the bilateral hips; and depressive disorder[.]" Tr. 14.

At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. The ALJ specifically considered the following listings: Listings 1.00, 11.00, and 14.00 (regarding plaintiff's post-laminectomy syndrome); Listing 1.02 (regarding plaintiff's bilateral hip movement); Listing 1.04 (regarding plaintiff's spine-related impairments); and Listing 12.04 (regarding plaintiff's mental impairments). See Tr. 14-17.

Before moving on to step four, the ALJ found that plaintiff

---

was disabled prior to the expiration of her insured status, i.e., as of her date last insured. See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's date last insured is December 31, 2021. See Tr. 102, 119. Accordingly, and as acknowledged by the ALJ, the relevant time period under consideration is the alleged onset date of June 16, 2015, through March 18, 2020, the date of the ALJ's decision. See Tr. 27.

had the RFC

> to perform sedentary work as defined in 20 CFR
> 404.1567(a) with the following additional limitations:
> The claimant can occasionally climb ramps and stairs;
> cannot climb ladders, ropes or scaffolds; can frequently
> balance; and can occasionally stoop, kneel, crouch and
> crawl. She cannot work at unprotected heights and cannot
> operate a motor vehicle. She cannot operate machinery
> having moving mechanical parts which are exposed. She
> must avoid concentrated exposure to extreme cold and
> vibration. She can perform simple, routine tasks and can
> execute simple, routine instructions. She can tolerate
> occasional interaction with the general public. She can
> tolerate occasional, minor changes in her work setting
> and work procedures.

Tr. 17.

At step four, the ALJ concluded that plaintiff was "unable to perform any past relevant work[.]" Tr. 24.

At step five, considering plaintiff's "age, education, work experience, and residual functional capacity," Tr. 25, the ALJ found that plaintiff could perform the jobs of document preparer; addresser; and touch-up screener, circuit board assembly. See Tr. 26.

## V.   DISCUSSION

Plaintiff asserts that: (1) "The ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of long-time treating pain management specialist, David Levi, M.D.[,]" Doc. #15-1 at 2; and (2) "[t]he ALJ failed to properly evaluate Plaintiff's subjective complaints as required by the regulations." Id. at

9

11.

### A.   Plaintiff's RFC

Plaintiff contends that the ALJ's physical "RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of long-time treating pain management specialist, David Levi, M.D." Id. at 2. Defendant responds that the ALJ "reasonably found that the record supported some of the postural, lifting, standing, and walking limitations suggested by Dr. Levi, but did not support his excessive restrictions regarding sitting, reaching, the need for breaks or changing positions, or absences[.]" Doc. #20-1 at 7.

### 1.   Dr. Levi's Opinions

The ALJ found Dr. Levi's Medical Source Statement to be "persuasive in part."[4] Tr. 21. In other words, the ALJ accepted the Medical Source Statement in part. Despite that partial acceptance, plaintiff asserts that "the ALJ's rejection of Dr. Levi's opinion as not being supported by the evidence hardly provides a sufficient analysis of the consistency factor and

---

[4] Plaintiff does not explicitly address the ALJ's statement that "Dr. Levi's February 2019 letter and his opinions of inability to work and disability as contained in his treatment records ... are not persuasive." Tr. 22. However, "[a] bald statement that a claimant is 'disabled' represents an administrative finding, not a medical opinion." Trepanier v. Comm'r of Soc. Sec., 752 F. App'x 75, 77 (2d Cir. 2017). Thus, the ALJ properly determined that such opinions were not persuasive.

certainly provides no analysis of the supportability factor."
See Doc. #15-1 at 6.

> i. *Applicable Law*

The SSA has enacted new regulations regarding the consideration of medical opinions for claims filed on or after March 27, 2017. See 20 C.F.R. §404.1520c. Because plaintiff filed her application on July 17, 2018, see Tr. 118, the new regulations apply to plaintiff's claim.

"Previously, the SSA followed the treating physician rule, which required the agency to give controlling weight to a treating source's opinion, so long as it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citation and quotation marks omitted). Under the new regulations, "no particular deference or special weight is given to the opinion of a treating physician." Quiles v. Saul, No. 19CV11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021).

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning weight to a medical opinion, the ALJ must still articulate how he or she considered the medical opinions and how persuasive he or she finds all of the medical

opinions." <u>Jacqueline L.</u>, 515 F. Supp. 3d at 8 (citation and quotation marks omitted); <u>see also</u> 20 C.F.R. §404.1520c(a). For applications filed after March 27, 2017, the ALJ evaluates medical opinions using the factors outlined in 20 C.F.R. §404.1520c(c)(1)-(5). <u>See</u> 20 C.F.R. §404.1520c(a). "The factors of supportability ... and consistency ... are the most important factors" the ALJ "consider[s] when ... determin[ing] how persuasive [to] find a medical source's medical opinions[.]" 20 C.F.R. §404.1520c(b)(2).

When "articulat[ing] [the] consideration of medical opinions" the ALJ "will articulate ... how persuasive [he] find[s] all of the medical opinions[.]" 20 C.F.R. §404.1520c(b). In doing so, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions[.]" 20 C.F.R. §404.1520c(b)(2). The ALJ will also consider the medical source's relationship with the claimant; the medical source's specialization; and "other factors that tend to support or contradict a medical opinion[.]" 20 C.F.R. §404.1520c(c)(3)-(5). However, the ALJ is "not required to[] explain how" he evaluated these additional factors. 20 C.F.R. §404.1520c(b)(2).

The new regulations acknowledge that "[a] medical source may have a better understanding of your impairment(s) if he or

she examines you than if the medical source only reviews
evidence in your folder." 20 C.F.R. §404.1520c(c)(3)(v). Thus,

> [e]ven though ALJs are no longer directed to afford
> controlling weight to treating source opinions -- no
> matter how well supported and consistent with the record
> they may be -- the regulations still recognize the
> "foundational nature" of the observations of treating
> sources, and "consistency with those observations is a
> factor in determining the value of any [treating
> source's] opinion." Barrett v. Berryhill, 906 F.3d 340,
> 343 (5th Cir. 2018).

Shawn H. v. Comm'r of Soc. Sec., No. 2:19CV00113(JMC), 2020 WL
3969879, at *6 (D. Vt. July 14, 2020); accord Jacqueline L., 515
F. Supp. 3d at 8.

    ii. *Analysis*

    Contrary to plaintiff's argument, the ALJ appropriately
addressed the relevant regulatory factors when explaining his
assessment of Dr. Levi's opinion. See Tr. 21-22; see also 20
C.F.R. §404.1520c(c). He also sufficiently explained the basis
for his findings as to both supportability and consistency, as
called for by the regulations. See 20 C.F.R. §404.1520c(b)(2).

    As to supportability, the ALJ stated:

> I recognize that Dr. Levi's opinions are supported in
> part by the clinical findings noted and likely supported
> in part by his longitudinal treatment history with the
> claimant. However, the clinical findings he noted do not
> support the restrictions of sitting, using the upper
> extremities, absences, or need for breaks and changing
> positions. Instead, these are largely conclusory
> statements that are not supported by the noted clinical
> findings. Moreover, Dr. Levi failed to explain how he
> arrived at these conclusions.

Tr. 22.

With respect to supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. §404.1520c(c)(1). "[T]he strength of a medical opinion (supportability) increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." Patricia B. v. Saul, No. 2:20CV00053(WKS), 2021 WL 6211418, at *5 (D. Vt. July 14, 2021).

Plaintiff argues that the "ALJ's rejection of Dr. Levi's opinion as not being supported by the evidence ... certainly provides no analysis of the supportability factor." Doc. #15-1 at 6. The Court disagrees.

The ALJ appropriately analyzed the supportability of Dr. Levi's opinion. At the outset, the ALJ noted that "Dr. Levi's opinions are supported in part by the clinical findings noted and likely supported in part by his longitudinal treatment history with the claimant." Tr. 22. The ALJ declined to fully credit Dr. Levi's Medical Source Statement, however, because his proposed "restrictions of sitting, using the upper extremities, absences, or need for breaks and changing positions" were

conclusory in nature and unsupported by his clinical findings. Id.

   The ALJ properly determined that portions of Dr. Levi's Medical Source Statement were conclusory in nature. See Powell v. Saul, No. 3:18CV01488(AWT), 2020 WL 1329696, at *9 (D. Conn. Mar. 23, 2020) (holding that the ALJ properly considered an opinion's supportability by observing that it was "conclusory," and provided "very little explanation"); Tanya L. v. Comm'r of Soc. Sec., No. 2:17CV00136, 2018 WL 2684106, at *5 (D. Vt. June 5, 2018) (holding that the "ALJ explicitly and unambiguously applied a significant regulatory factor -- supportability -- in assessing the opinions of Plaintiff's treating sources[]" when "the ALJ found that the opinions of Plaintiff's treating sources were 'conclusory in nature[]'"). A review of Dr. Levi's Medical Source Statement reveals that Dr. Levi described plaintiff's diagnoses, stated that she experienced "pain, radiating pain[,]" and reported that the pain occurred in the "Low Back / [unintelligible] LE Aching, Burning[.]" Tr. 777. But Dr. Levi failed to explain how any of these symptoms related to plaintiff's assessed limitations. See Davis v. Comm'r of Soc. Sec., No. 20CV02945(BMC), 2021 WL 1784313, at *2 (E.D.N.Y. May 5, 2021) (holding that doctor's opinion did "poorly on the supportability front[]" where doctor failed to provide any "'supporting explanations'" with the questionnaire he

completed). Thus, the ALJ properly considered the conclusory
nature of Dr. Levi's Medical Source Statement when conducting
his supportability analysis.

The ALJ also properly considered the extent to which Dr.
Levi's recommended restrictions were supported by his clinical
findings. The ALJ explained that "the clinical findings [Dr.
Levi] noted do not support the restrictions of sitting, using
the upper extremities, absences, or need for breaks and changing
positions." Tr. 22; see also Wright v. Colvin, No.
3:16CV00463(JCH), 2017 WL 202171, at *5 (D. Conn. Jan. 18, 2017)
("The ALJ's decision to give no weight to [a treating
physician's] opinions due to their inconsistency with her own
notes is supported by substantial evidence.").

Plaintiff challenges this finding by arguing that "Dr.
Levi's own treating history provides ample support for his
opined limitations[.]" Doc. #15-1 at 7.[5] To support that
conclusion, plaintiff points to treatment records stating, inter
alia, that plaintiff: (1) "was unable to work[,]" id. (citations

---

[5] Plaintiff's argument that Dr. Levi's treatment history provides
support for his recommended restrictions bears more on the
opinion's consistency than its supportability. See Acosta Cuevas
v. Comm'r of Soc. Sec., No. 20CV00502(AJN)(KHP), 2021 WL 363682,
at *10 (S.D.N.Y. Jan. 29, 2021) ("Consistency is an all-
encompassing inquiry focused on how well a medical source is
supported, or not supported, by the entire record[.]"), report
and recommendation adopted sub nom. Cuevas v. Comm'r of Soc.
Sec., 2022 WL 717612 (Mar. 10, 2022). However, the argument is
ultimately unpersuasive when addressed to either factor.

and quotation marks omitted); (2) could "not hold her right arm
out" due to pain from incisions following back surgery, id. at 6
(citing Tr. 389); (3) was "'not finding qualitative sustainable
pain relief despite stimulation in the areas of pain[,]'" id. at
7 (quoting Tr. 390); and (4) had limited "lumbar range of motion
due to pain from the fingertips to the mid shin, tenderness in
the paraspinals musculature, hamstring tightness, and a positive
facet loading test on the right with extension." Id. (citing Tr.
515-16, 710-11, 713, 717, 721, 749-50).

However, "[t]o the extent there is evidence supporting
plaintiff's position, that is not the question to be decided.
Rather, the question is whether substantial evidence supports
the ALJ's decision." Gentile v. Saul, No. 3:19CV01479(SALM),
2020 WL 5757656, at *12 (D. Conn. Sept. 28, 2020).

The ALJ's assessment of Dr. Levi's opinion was supported by
substantial evidence. Dr. Levi's treatment notes reflect that
plaintiff had full strength and sensory findings of the lower
extremities, normal stability, unremarkable gait, and the
ability to toe and heel walk with good strength. See e.g., Tr.
363-65, 382-83, 402, 404-06, 515, 710-11, 713-14, 717-18, 726-
27, 741. Moreover, Dr. Levi's treatment notes show that
plaintiff's pain partially improved with medication. See e.g.,
Tr. 362-66, 422, 512, 515, 710, 713. Thus, substantial evidence

supported the ALJ's determination that Dr. Levi's noted clinical findings did not support his recommended restrictions.

With respect to consistency, the regulations provide: "The more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §404.1520c(c)(2). As to this factor, the ALJ stated:

> Overall, Dr. Levi's opinions are only partially consistent with and supported by the evidence of record as a whole, which showed that the claimant experienced significant symptoms of lower back and bilateral hip pain that radiated into her legs, causing tenderness of the areas, a reduced range of back and hip motion, and some weakness of the hips, but also showed that she largely retained full strength and sensation of the lower extremities along with a normal gait, and that her symptoms of pain partially improved with pain relief medication. While this evidence supports in part some of the postural lifting, standing, and walking limitation suggested here, it does not support the restrictions regarding sitting, reaching, need for breaks or changing positions, or absences as opined here.

Tr. 21-22 (citations to the record omitted). Again, this explanation is both sufficient, and supported by substantial evidence.

Plaintiff asserts that the ALJ's "shoddy analysis of the consistency factor cannot be said to comply with the proper legal standards for evaluating opinion evidence." Doc. #15-1 at 8. To support that assertion, plaintiff points to: (1) treatment notes authored by Dr. Hermantin and Dr. Paul, describing plaintiff as "unable to work[,]" id. at 8, 9 (citations and

quotation marks omitted); (2) treatment notes indicating, among
other things, that plaintiff was experiencing "tenderness over
the trochanteric bursa on the left, [and] limited mobility of
the lumbar spine[,]" id. at 9 (citing Tr. 451); and (3) various
attempted treatment methods that did not alleviate plaintiff's
pain. See id. at 8-9. Plaintiff further contends, in reply, that
the ALJ's "citation to the record as a whole, and his reliance
on ... benign findings does not build an appropriate bridge
between the evidence and his partial rejection of Dr. Levi's
opined limitations." Doc. #21 at 2. The Court disagrees.

   As an initial matter, "[a] bald statement that a claimant
is 'disabled' represents an administrative finding, not a
medical opinion." Trepanier, 752 F. App'x at 75. As a result,
Dr. Hermantin and Dr. Paul's statements that plaintiff was
unable to work or disabled are "inherently neither valuable nor
persuasive[,]" and the ALJ was not required to "provide any
analysis about how [he] considered such evidence in [his] ...
decision[.]" 20 C.F.R. §404.1520b(c).

   Moreover, the ALJ "need not explicitly reconcile every
conflicting shred of medical testimony." Jones v. Berryhill, 415
F. Supp. 3d 401, 415 (S.D.N.Y. 2019) (citations and quotation
marks omitted). Instead, "[c]onsistency is an all-encompassing
inquiry focused on how well a medical source is supported, or
not supported, by the entire record, not just what a medical

19

source had available to them." Acosta Cuevas, 2021 WL 363682, at
*10. The ALJ properly conducted that inquiry here. As the ALJ
noted, the evidence of record reflects that throughout the
disability period, plaintiff retained full strength and
sensation of the lower extremities, along with a normal gait.
See, e.g., Tr. 363-65, 382-83, 402, 404-06, 473, 479, 515, 662,
710-11, 713-14, 717-18, 726-27, 741. Moreover, the treatment
records show that plaintiff's physicians could not identify a
"mechanical cause" for her back and radicular pain, Tr. 474, and
that her symptoms partially improved with medication. See e.g.,
Tr. 362-66, 422, 446, 512, 515, 710, 713. In light of this
evidence, the ALJ properly determined that the record "supports
in part some of the postural, lifting, standing, and walking
limitation suggested" by Dr. Levi, but "does not support the
restrictions regarding sitting, reaching, need for breaks or
changing positions, or absences[.]" Tr. 22.

The Court finds that the ALJ adequately explained the basis
for his assessment of Dr. Levi's opinions, including the factors
of supportability and consistency, and that substantial evidence
supports the ALJ's conclusion that Dr. Levi's Medical Source
Statement was persuasive in part. There is no error on this
basis.

      2.   The ALJ's RFC Determination

The ALJ properly evaluated the medical opinion evidence

when determining that plaintiff had the physical RFC to perform
sedentary work with additional restrictions. A plaintiff's RFC
is "the most [she] can still do despite [her] limitations." 20
C.F.R. §404.1545(a)(1). The RFC is assessed "based on all of the
relevant medical and other evidence." 20 C.F.R. §404.1545(a)(3).
"An RFC determination is informed by consideration of a
claimant's physical abilities, mental abilities, symptomology,
including pain, and other limitations which could interfere with
work activities on a regular and continuing basis." Pardee v.
Astrue, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009).

     Here, the ALJ determined that plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR
> 404.1567(a) with the following additional limitations:
> The claimant can occasionally climb ramps and stairs;
> cannot climb ladders, ropes or scaffolds; can frequently
> balance; and can occasionally stoop, kneel, crouch and
> crawl. She cannot work at unprotected heights and cannot
> operate a motor vehicle. She cannot operate machinery
> having moving mechanical parts which are exposed. She
> must avoid concentrated exposure to extreme cold and
> vibration. She can perform simple, routine tasks and can
> execute simple, routine instructions. She can tolerate
> occasional interaction with the general public. She can
> tolerate occasional, minor changes in her work setting
> and work procedures.

Tr. 17.

     The ALJ properly considered all of the medical opinion
evidence when evaluating plaintiff's physical RFC. Crucially, in
conducting that evaluation, the ALJ did not simply rely upon the
least restrictive opinion offered. To the contrary, the ALJ

rejected the opinions of Dr. Abe Colb -- the initial-level state agency consultant -- as "not persuasive" because, among other reasons, Dr. Colb's opinions were "not reflective of more recently submitted evidence showing greater functional restriction[.]" Tr. 21.

Instead, the ALJ relied on portions of Dr. Levi's opinion, and on the opinion of reconsideration-level state agency medical consultant, Dr. Joe Connolly, M.D., when making his RFC determination. See Tr. 20-22.

The ALJ's partial reliance on Dr. Levi's opinion was proper. "ALJs are entitled to accept certain portions of medical opinions while rejecting others." Cote v. Berryhill, No. 3:17CV01843(SALM), 2018 WL 4092068, at *23 (D. Conn. Aug. 28, 2018) (citations and quotation marks omitted). Thus, for the reasons described more fully above, see supra at 13-20, the ALJ did not err by relying on portions of Dr. Levi's opinion.

The ALJ also properly relied on Dr. Connolly's opinion when determining plaintiff's physical RFC.[6] "State agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation and these opinions may constitute substantial

---

[6] While the ALJ refers to Dr. Connolly's opinion in the plural, the undersigned has identified only one opinion authored by Dr. Connolly. See Tr. 119-33.

evidence if they are consistent with the record as a whole."
Lumpkin v. Saul, No. 3:19CV01159(WIG), 2020 WL 897305, at *6 (D.
Conn. Feb. 25, 2020) (citation and quotation marks omitted). Dr.
Connolly opined that plaintiff was limited to the sedentary
exertional level, see Tr. 132, with frequent balancing;
occasional kneeling, crouching, crawling, and climbing of ramps
and stairs; never climbing ladders, ropes or scaffolds; and a
need to avoid all exposure to hazards. See Tr. 128-29.

The ALJ found Dr. Connolly's opinion to be "persuasive."
Tr. 20. In making that determination, the ALJ stated:

> Overall, Dr. Connolly's opinions are consistent with and
> supported by the evidence of record as a whole, which
> showed that the claimant experienced significant
> symptoms of lower back and bilateral hip pain that
> radiated into her legs, causing tenderness of the areas,
> a reduced range of back and hip motion, and some weakness
> of the hips, but also showed that she largely retained
> full strength and sensation of the lower extremities
> along with a normal gait, and that her symptoms of pain
> partially improved with pain relief medication. This
> evidence supports the level of restriction opined here
> by Dr. Connolly. I note that, although Dr. Connolly did
> not personally examine the claimant, his opinions are
> consistent with the evidence that he reviewed and that
> he had the opportunity to review later-submitted
> evidence that showed some significant functional
> restriction. Moreover, Dr. Connolly supported his
> conclusions with objective medical findings and
> explanation, improving the value of his assessment.
> Further, as a consultant, he possesses particularized
> knowledge of the disability program, which enables him
> to make judgments with regard to the claimant's symptoms
> and allegations of disabling limitations. For these
> reasons, Dr. Connolly's opinions are persuasive.

Tr. 20-21 (citations to the record omitted).

Critically, plaintiff does not contend that Dr. Connolly's opinion was unpersuasive or unsupported by substantial evidence. Indeed, plaintiff does not challenge the ALJ's evaluation of Dr. Connolly's opinion at all. Thus, the ALJ properly relied on Dr. Connolly's medical opinion and portions of Dr. Levi's opinion when determining that plaintiff had the RFC to perform sedentary work with additional restrictions. There was no error on this point.

**B.   Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ "failed to properly evaluate Plaintiff's subjective complaints as required by the regulations." Doc. #15-1 at 11. Specifically, plaintiff asserts that "the ALJ failed to discuss what 'other' evidence informed his determination to reject Plaintiff's reports of pain and debilitating depression." Id. at 12. Defendant responds that "the ALJ properly considered Plaintiff's subjective complaints and set forth substantial evidence supporting his findings." Doc. #20-1 at 10.

1.   Applicable Law

Although "the subjective element of pain is an important factor to be considered in determining disability[,]" Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984), an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." Rivers v.

Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). "The ALJ has
discretion to evaluate the credibility of a claimant and to
arrive at an independent judgment, in light of medical findings
and other evidence, regarding the true extent of the pain
alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27
(2d Cir. 1979).

"The Regulations set forth a two-step process that an ALJ
must follow in evaluating a plaintiff's subjective complaints."
David F. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00315(SALM),
2021 WL 5937670, at *7 (D. Conn. Dec. 16, 2021). First, the ALJ
must determine whether the record demonstrates that plaintiff
suffers from a "medically determinable impairment that could
reasonably be expected to produce [plaintiff's] symptoms, such
as pain." 20 C.F.R. §404.1529(b). Second, the ALJ must assess
the credibility of plaintiff's complaints regarding "the
intensity and persistence of [plaintiff's] symptoms" to
"determine how [the] symptoms limit [plaintiff's] capacity for
work." 20 C.F.R. §404.1529(c)(1). In making this determination,
the ALJ will consider both the "objective medical evidence" and
"other evidence." 20 C.F.R. §404.1529(c)(2)-(3). When evaluating
the "other evidence," the ALJ will consider factors such as:

> (i) [plaintiff's] daily activities; (ii) The location,
> duration, frequency, and intensity of [plaintiff's] pain
> or other symptoms; (iii) Precipitating and aggravating
> factors; (iv) The type, dosage, effectiveness, and side
> effects of any medication [plaintiff] take[s] or ha[s]

taken to alleviate [plaintiff's] pain or other symptoms;
(v) Treatment, other than medication, [plaintiff]
receive[s] or ha[s] received for relief of [plaintiff's]
pain or other symptoms; (vi) Any measures [plaintiff]
use[s] or [has] used to relieve [plaintiff's] pain or
other symptoms ... ; and (vii) Other factors concerning
[plaintiff's] functional limitations and restrictions
due to pain or other symptoms.

20 C.F.R. §404.1529(c)(3).

In making this assessment, the ALJ considers all evidence
in the case record. See Social Security Ruling ("SSR") 16-3P,
2017 WL 5180304, at *8 (S.S.A. Oct. 25, 2017). "Where the ALJ
has identified specific reasons for his credibility
determination, which are supported by substantial evidence in
the record, the Court will not second-guess his decision."
Wascholl v. Saul, No. 3:19CV01281(SALM), 2020 WL 2898824, at *12
(D. Conn. June 3, 2020) (citing Stanton v. Astrue, 370 F. App'x
231, 234 (2d Cir. 2010)).

2.   Analysis

The ALJ concluded that plaintiff's "statements concerning
the intensity, persistence and limiting effects of [her]
symptoms are not entirely consistent with the medical evidence
and other evidence in the record[.]" Tr. 18.

Plaintiff contends that the ALJ "failed to discuss what
'other' evidence informed his determination to reject
Plaintiff's reports of pain and debilitating depression[,]" Doc.
#15-1 at 12, instead reciting "a summary of various medical

26

records including Plaintiff's history of spinal surgery and subsequent treatment related to her spine, hip, and leg pain, and her depression." Id. at 11. Specifically, plaintiff asserts that "where, as here, the ALJ has failed to conduct any analysis regarding the other various factors including the claimant's daily activities, the frequency and intensity of pain, the type, dosage, effectiveness, and side effects of medication, and other treatment that relieves pain, his rejection of her subjective complaints is the product of legal error." Id. at 13.

Although the ALJ did not expressly address every factor plaintiff lists, the Court is able to glean from both the ALJ's decision, and the record, that he appropriately considered the regulatory factors when assessing plaintiff's subjective complaints. See Martes v. Comm'r of Soc. Sec., 344 F. Supp. 3d 750, 767 (S.D.N.Y. 2018) ("An ALJ need not ... explicitly address each and every statement made in the record that might implicate her evaluation of a claimant's credibility 'as the evidence of record permits us to glean the rationale of an ALJ's decision.'" (quoting Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013))).

First, the ALJ properly addressed the objective medical evidence. In doing so, the ALJ noted that despite plaintiff's "complaints of pain, [plaintiff's] providers repeatedly told her that they did not see any mechanical cause for her ongoing

27

complaints of back or radicular pain[.]" Tr. 19 (citing Tr. 398, 467, 474). Moreover, as the ALJ stated, plaintiff's treatment notes indicated that she had full strength in her lower extremities, normal sensory examination findings, normal stability, an unremarkable gait, and the ability to walk with good strength. See Tr. 19. Thus, the ALJ properly discounted plaintiff's subjective complaints because "they conflict[ed] with the objective [medical] evidence of record." Wascholl, 2020 WL 2898824, at *11.

Second, the ALJ explicitly considered plaintiff's treatment and medication. "While conservative treatment alone is not grounds for an adverse credibility finding, the ALJ may take it into account along with other factors." Id. at *12 (citation and quotation marks omitted). Here, the ALJ noted that plaintiff took "prescription and narcotic pain relief medications and used opiate analgesics[,]" which "improved her condition in part and allowed her to bathe and complete activities of daily living[.]" Tr. 19 (citing Tr. 422, 745). Moreover, the ALJ noted that plaintiff "received steroid injections in her back[,]" and "had a spinal cord stimulator implanted" in July 2016. Tr. 19 (citing Tr. 366, 368, 536, 782). While that stimulator "initially improved her symptoms of pain[,]" such improvement "did not last and the claimant had the stimulator removed in March 2017[.]" Tr. 19 (citing Tr. 402, 405). Finally, the ALJ observed that

"[f]ollowing the removal of the stimulator, the claimant attended physical therapy in 2017, which partially improved her hip range of motion[.]" Tr. 19 (citing Tr. 584-622).[7]

Third, the ALJ considered plaintiff's daily activities. The "regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms." Duquette v. Saul, No. 3:19CV00526(SALM), 2020 WL 2832215, at *13 (D. Conn. May 31, 2020). As noted above, the ALJ properly indicated that taking medication enabled plaintiff to "bathe and complete activities of daily living[.]" Tr. 19; see also Tr. 16 ("The claimant also admitted during the hearing that she could prepare simple meals, complete personal hygiene tasks, wash laundry, and that she lived independently before recently moving in with her mother[.]"). Furthermore, the ALJ noted that plaintiff "worked part-time following her June 2015 lumbar spine surgery up through July 2016, reporting that she worked several hours per day as a massage therapist[,]" but experienced "ongoing symptoms

_____

[7] Plaintiff asserts, in passing, that the ALJ failed to consider the side effects of plaintiff's medication. See Doc. #15-1 at 13 ("[T]he ALJ failed to conduct any analysis regarding the ... type, dosage, effectiveness, and side effects of medication[.]"). However, no medical opinion in the record found restrictions related to the side effects of medication, and plaintiff testified that she does not experience any side effects, aside from constipation, from her medication. See Tr. 66. Thus, the ALJ's failure to expressly discuss the side effects of plaintiff's medications did not constitute error.

of lower back pain that radiated into her bilateral legs that worsened with prolonged sitting, standing, and bending[.]" Tr. 18. Finally, the ALJ stated that plaintiff "admitted during the hearing that she traveled to Massachusetts to see a band play during the relevant period and that she sometimes went out to eat, suggesting some ability to leave her home and tolerate strangers or crowds[.]" Tr. 16.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Here, the ALJ properly considered the consistency of plaintiff's subjective complaints with the other evidence of record. See Martone v. Apfel, 70 F. Supp. 2d 145, 153 (N.D.N.Y. 1999) ("[T]he objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations. Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

The Court will not "second-guess the [ALJ's] credibility finding ... where the ALJ identified specific record-based

reasons for his ruling." <u>Stanton</u>, 370 F. App'x at 234.
"Moreover, the ALJ had the opportunity to personally observe
plaintiff and her testimony, something the Court cannot do."
<u>Poole</u>, 462 F. Supp. 3d at 159. Accordingly, the Court finds no
error in the ALJ's assessment of plaintiff's subjective
complaints.

**VI.** **<u>CONCLUSION</u>**

For the reasons set forth herein, plaintiff's Motion to
Reverse or Remand an Administrative Agency Decision **[Doc. #15]**
is **DENIED,** and defendant's Motion for an Order Affirming the
Decision of the Commissioner **[Doc. #20]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 1st day of
April, 2022.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE